**Barbara NASH and John Nash, Plaintiffs–Appellants,**

v.

**KLOSTER CRUISE A/S, Defendant–Appellee.**

No. 89–8475.

United States Court of Appeals, Eleventh Circuit.

May 23, 1990.

As Amended May 24, 1990.

---

1566

David Sinclair Walker, Jr., Lilburn, Ga., Benjamin S. Williams, Williams & Henry, Atlanta, Ga., for plaintiffs-appellants.

Michael W. McElroy, Harman, Owen, Saunders & Sweeney, Atlanta, Ga., for defendant-appellee.

Before CLARK, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

PER CURIAM:

This appeal raises the question of whether a cruise line ticket provided the plaintiff passengers with reasonable notice of a one-year limitation period on their right to sue for personal injuries sustained during the cruise. Holding that reasonable notice was provided, we affirm the district court's entry of summary judgment for defendant.

Two days after embarking on a November 1986 Caribbean cruise, passenger Barbara Nash slipped and fell on a gangplank, sustaining injuries for which she and her husband John brought suit some fourteen months later. Since suit was not brought within one year of the date of injury, the district court found the suit time-barred pursuant to the contractual limitation set forth in the cruise ticket.

Plaintiffs contend that the one-year time limit in the contract does not apply because the cruise line did not reasonably notify them of the limitation. Title 46 U.S.C.A.App. § 183b(a) permits cruise lines to place a one-year contractual time limit on their passengers' right to file personal injury suits. Courts will enforce such a limitation if the cruise ticket provided the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract. *Kornberg*

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

*v. Carnival Cruise Lines,* 741 F.2d 1332, 1335 (11th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11, 13 (5th Cir.1979); Annotation, *Federal View as to Effect of Conditions Appearing on Back or Margin of Passenger's Ticket for Ocean Voyage,* 5 A.L.R. Fed. 394 (1970). Whether the notice to passengers was reasonably adequate is a question of law. *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 867 (1st Cir. 1983); *Barbachym v. Costa Line,* 713 F.2d 216, 218 (6th Cir.1983).

There is no issue here as to whether the *language* of the notice satisfied the requirements articulated by the cases. *E.g., Carpenter,* 604 F.2d at 13 (the notice must inform passengers that terms printed elsewhere in the ticket constitute binding part of contract); *Shankles,* 722 F.2d at 864 (the language must be such as to "reasonably communicate to [passengers] the existence [within the ticket] of important terms and conditions which affect legal rights"). Instead, the Nashes question the *placement* of the notice. They urge that Kloster's failure to print the notice either on the cover of the ticket packet or on the ticket that the Nashes had to surrender upon boarding renders the notice inadequate as a matter of law.

The ticket in question was issued in multi-page, packet form. Page one was the cover of the ticket packet. This was followed by two detachable pages, the first labelled "AGENT'S COPY" and the second "PASSENGER TICKET—TO BE PRESENTED FOR PASSAGE." These two pages contained printed instructions directing their removal before a passenger embarked on a cruise, and in this case these pages had indeed been removed from the packet by the time of Mrs. Nash's injury: the first page was removed by the travel agent prior to the packet's issuance, and the second was removed by the cruise line upon boarding. Although the district court made no specific finding on this point, its accuracy is apparent from the record, since in the district court (1) the Nashes filed an affidavit from their travel

agent that attached the "AGENT'S COPY" of the Nashes' ticket, and (2) Kloster submitted an affidavit from its director of customer relations that attached the "PASSENGER TICKET—TO BE PRESENTED FOR PASSAGE" page of the Nashes' ticket. It is unlikely that either affiant would have been able to produce copies of these pages had they not been duly detached from the Nashes' ticket packet.

The removal of these detachable pages rendered the "PASSENGER COPY"— though numbered page four—the first page in the Nashes' ticket packet after the cover page. In a rectangular box at the bottom left-hand corner of this "PASSENGER COPY" appeared the following language in bold red type: "NOTICE: THE PASSENGER'S ATTENTION IS SPECIFICALLY DIRECTED TO THE TERMS AND CONDITIONS OF THIS CONTRACT APPEARING ON PAGES 6, 7, AND 8." That contract, denominated "CONTRACT OF PASSAGE," bore this bold-typed legend at the top of its first page: "Passengers are advised to read the terms and conditions of the Passenger Contract Ticket set forth below. Acceptance of this Passenger Contract Ticket by Passenger shall constitute the agreement of Passenger to these Terms and Conditions."

Each numbered paragraph of text which followed was typed in characters of the same size, style, and color. The thirteenth paragraph appeared on page seven of the ticket packet and stated in pertinent part:

No suit ... for any cause against the carrier with respect to ... personal injury ... [shall] be maintainable, unless [such] suit shall be commenced within one (1) year from the day when the ... personal injury ... of the passenger occurred, notwithstanding any provision of law of any state or country to the contrary.

Although the packet cover is not in the record, the Nashes acknowledge that the ticket packet issued to plaintiff in *O'Connell v. Norwegian Caribbean Lines [Kloster],* 639 F.Supp. 846 (N.D.Ill.1986) (a case on which they heavily rely), was the same type as was issued here. The *O'Con-*

*nell* court described the packet cover as simply a "decorated cover page." 639 F.Supp. at 848. Thus, at the time Mrs. Nash sustained her fall, her ticket packet consisted of this decorated cover page, followed immediately by the "PASSENGER COPY," which contained a legally-sufficient notice and incorporation provision. We hold that this complied with the reasonable notice requirements.

This situation is not unlike that presented in *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 247 (3rd Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987), where appellant argued that the notice provision was inadequate "because it was concealed by a sheet of carbon paper in the ticket folder." The Third Circuit stated:

> The carbon paper is merely one page in the ticket folder, and its presence does not nullify the ticket's warnings or destroy the reasonableness of [the notice provision].... [A]fter a disaster it would seem entirely natural that any passenger suffering a loss or damage would lift the carbon paper in the process of closely examining the ticket's provisions.

*Id.* (quotation and citation omitted). There is nothing unreasonable in expecting that a passenger suffering an injury would lift the decorated cover page in the process of examining the ticket's terms.

■ Adequate notice did not require the provision's appearance on the page the Nashes surrendered on boarding. To impose such a requirement would be to ignore practical realities. As the First Circuit observed:

> Although a passenger may almost never read all of the fine print on the ticket upon purchase, or as pleasure reading in the berth the first night at sea, the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket/contract in the event of an accident resulting in a loss or injury. Thus, we think that the question of whether the passenger is bound by the ticket provisions should also take into account the circumstances of the passen-

ger's possession of and familiarity with the ticket.

*Shankles*, 722 F.2d at 865. Here, Kloster's placement of the notice provision on the "PASSENGER COPY" makes practical sense, as Mrs. Nash was not likely to read it until she was injured, and by that time, it was essentially the first page in her ticket packet.

AFFIRMED.